IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                              Case No. 21-10049-02-JWB

BRANDEE RIMER,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to suppress evidence. (Doc. 75.) The government has filed a response. (Doc. 78.) The court held an evidentiary hearing on August 16, 2022, and took the motion under advisement. For the reasons stated herein, Defendant's motion to suppress is GRANTED IN PART and DENIED IN PART.

**I. Facts**

The court finds the following facts from the evidence presented at the suppression hearing. Sometime during the afternoon or evening of August 3, 2020, Wichita Police Detective Daniel Weidner was working with a Drug Enforcement Administration (DEA) task force. Weidner was asked to make a traffic stop of a Ford F-250 truck being driven by an individual named Aaron Perry, whom officers had reason to suspect was transporting controlled substances. Weidner, who was a trained handler of a drug-detecting canine and who had the dog with him, stopped Perry for a traffic violation. Weidner conducted a dog sniff that resulted in discovery of a cardboard box containing 29 pounds of suspected methamphetamine in Perry's vehicle.

Perry identified the intended recipient of the methamphetamine as Jeremy Smith and agreed to cooperate with officers in a controlled delivery of methamphetamine to Smith.  Although the evidence at the hearing included few details about the delivery or what officers knew at the time, it indicated that Perry texted Smith to arrange a meeting at a QuikTrip store at 143rd Street East and Kellogg Avenue, where the delivery was to take place.  Perry apparently informed officers that Smith would arrive in a yellow Hummer vehicle.  Sometime around 11 p.m., officers set up around the QuikTrip as Perry drove his truck there and parked in the lot, waiting for Smith to arrive.  Officers had already removed most of the methamphetamine from the cardboard box in Perry's possession, leaving only about 2 pounds of it in the box, and replaced the rest with other items so the box weighed about the same as before.

Smith arrived at the QuikTrip driving a yellow Hummer and parked near Perry's truck.  A woman – Defendant Brandee Rimer – was seated in the front passenger seat of the Hummer with Smith.[1]  Smith got out and briefly conversed with Perry.  Perry then handed Smith the cardboard box, which Smith took and placed in the back of the Hummer through a rear hatch or tailgate.  As soon as he did so, officers moved in, directing Smith to get down on the ground, and handcuffed him.  Officers found a syringe on Smith near his ankle, apparently hidden in his sock.  After officers had Smith in custody, DEA Agent Jacob Seibel directed Defendant out of the vehicle and placed her under arrest.  Defendant and Smith were transported to a DEA office a few miles away.  Officers also moved the Hummer to the parking lot of the DEA office.

---

[1] At the evidentiary hearing, DEA Agent Charles Williams was asked what information Perry had provided to officers about Brandee Rimer.  After Williams said he did not recall, he was asked to look at his report of an interview of Perry, and was then asked if the report mentioned Rimer.  Williams indicated the report stated that Smith was currently with his wife, Brandee Lynn Rimer.  It was not clear from the testimony, however, whether Perry was the source of that particular assertion and, if so, when the statement was made, or the context and meaning of it.

At the DEA office, Weidner was assigned the job of photographing, searching, and cataloguing any evidence in the Hummer. The parking lot where the Hummer was parked was partially enclosed by a fence. Weidner found a suitcase in the back of the Hummer and searched it. It had mostly women's items in it, as well as some syringes with suspected heroin inside, a small digital scale, and two small bags of what appeared to be methamphetamine and heroin. Detective Shek Weber of the WPD also participated in the search. Weber testified that he understood the search was incident to the arrest and was also an inventory search because the vehicle would be processed for forfeiture under drug laws. Weber found a black purse-type bag in the front passenger seat. He opened it and found a wallet inside containing $5,270 in U.S. currency. The purse also contained identification belonging to Brandee Rimer.

The arrests at QuikTrip likely took place sometime after 11 p.m. Agents interviewed Smith at the DEA office beginning around 11:30 p.m. No evidence was presented to show when the search of the Hummer took place. Defendant was placed in a holding cell at the DEA office and was given a bottle of water while agents interviewed Smith. After the interview with Smith was complete, Agents Williams and Seibel interviewed Defendant in a small interview room beginning at 1:44 a.m. They began by going over an "Advice of Rights" form with Defendant. (Govt. Exh. 1.) The officers read Defendant the rights listed on the form, telling her she had the right to remain silent, that anything she said could be used against her, that she had the right to talk to a lawyer before questioning and to have the lawyer present during questioning, and that a lawyer would be appointed for her if she could not afford one. Defendant placed her initials by each written statement of these rights. Defendant signed the form under an acknowledgement indicating she understood her rights and was willing to freely and voluntarily answer questions without a lawyer. She then answered questions by the agents for somewhere between thirty minutes to an hour.

Defendant, who is 40 years old, testified at the suppression hearing that she has been a heroin addict since the age of 18, sometimes using heroin up to fifteen times per day. She has multiple prior arrests and convictions. Defendant testified that she and Smith flew to Wichita from Los Angeles on August 3 (with a layover in either Denver or Dallas), and that she used heroin that morning in Los Angeles before getting on the flight. She also testified that Smith had prepared two additional syringes of heroin, which he placed in a carry-on bag and which they intended to inject during their layover, but that due to a flight delay they did not have time to do so. She testified that they had left the Hummer parked at the Wichita airport when they flew to California, and that upon arriving back in Wichita she and Smith drove from the Wichita airport to the QuikTrip. Defendant testified that during the DEA interview, she was in pain, she was going through heroin withdrawal, and she felt sick. Defendant testified she does not remember details of what happened during the interview and that at the time she just wanted to go home and get high.

Defendant appears to be of at least average intelligence. She has been arrested and has gone through the criminal process on a number of prior occasions. She exhibited no visible symptoms of sickness or withdrawal during her interview, according to Agent Williams, and provided coherent and apparently accurate information in response to the questions she was asked. Defendant never asked to stop the interview and never exhibited any outward signs of physical illness or distress during the interview. And although she discussed her heroin addiction with the agents during the interview, including the fact that she had used heroin that day, she never expressed to the agents that she was having difficulty conducting the interview or with answering their questions, and never requested medical attention.

Defendant's motion to suppress argues that Defendant was unlawfully arrested in the absence of probable cause, that the warrantless search of the Hummer and the items in it was unreasonable, and that Defendant's waiver of *Miranda* rights and her statements to the officers were not made knowingly and voluntarily. She seeks suppression of all evidence derived from the arrest, the search, and the interrogation. (Doc. 75.)

**II. Analysis**

**A. Probable Cause to Arrest**

The Fourth Amendment to the United States Constitution provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. AMEND. IV. A warrantless arrest of a person is reasonable under the Fourth Amendment if the arresting officer has probable cause to believe that the suspect committed a crime in the officer's presence. *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018) (citing *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001)). "Probable cause to arrest exists where, under the totality of the circumstances, a reasonable person would believe that an offense has been committed by the person arrested." *United States v. Martin*, 613 F.3d 1295, 1302 (10th Cir. 2010) (internal quotation marks omitted). This is an objective inquiry. *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006). "To determine whether an officer had probable cause for an arrest, 'we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause.'" *Wesby*, 138 S. Ct. at 586 (citations omitted.) "Because probable cause "deals with probabilities and depends on the totality of the circumstances,' … it is 'a fluid concept' that is 'not readily, or even usefully, reduced to a neat set of legal rules.'" *Id.* (citations omitted.) It "requires only a probability or

5

substantial chance of criminal activity, not an actual showing of such activity." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 243-44, n. 13 (1983)). Probable cause "is not a high bar: It requires only the 'kind of 'fair probability' on which 'reasonable and prudent [people,] not level technicians, act.'" *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

The case of *Maryland v. Pringle*, 540 U.S. 366 (2003) provides the framework for analyzing the issue of probable cause in this case. In *Pringle*, police stopped a car for speeding around 3 a.m. in the morning. There were three men in the car, including Pringle, who was in the front passenger seat. Police found $763 in the front glove compartment and five clear plastic baggies of cocaine hidden between the back seat armrest and the back seat in a spot "accessible to all three men." *Id.* at 372. When questioned, the three men offered no information about ownership of the money or the drugs. The issue before the Supreme Court was whether the officers had probable cause to arrest Pringle. The Supreme Court found it was an "entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine," such that probable cause existed for Pringle's arrest. *Id.* at 800-01. The court found the circumstances indicated the likelihood of drug dealing, "an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." *Id.* at 801.

The *Pringle* Court rejected an argument that its finding amounted to guilt-by-association and distinguished two prior decisions where "mere propinquity [i.e, proximity] to others independently suspected of criminal activity" was not enough for probable cause. *Id.* at 801 (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). In *Ybarra*, for instance, officers obtained a warrant to search a tavern and its bartender for evidence of possession of a controlled substance. *Id.* Upon entering, the officers engaged in a pat-down search of the tavern's customers, including

6

Ybarra. The Supreme Court found this search was unreasonable, noting the police "had no reason to believe that [Ybarra] had committed, was committing, or was about to commit any offense," and that the only thing police knew was Ybarra "was present, along with several other customers, in a public tavern at a time when the police had reason to believe that the bartender would have heroin for sale." *Id.* at 91. The Court said the requirement for particularized probable cause cannot be supported by "the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." *Id.*

*Pringle* also discussed *United States v. Di Re*, 332 U.S. 581 (1948), where an informant told officers he was going to buy counterfeit rationing coupons from one Buttita at a certain place in Buffalo, New York. Police found Buttita's car at the appointed place and, upon approaching, found the informant in the back seat with two counterfeit coupons in his hand. When police asked where he got them, the informant said from Buttita, who was sitting in the driver's seat. A third man, Di Re, was sitting in the front passenger seat at the time. The Supreme Court concluded the police did not have probable cause to arrest Di Re, noting officers had no information indicating Di Re was in the car when the informant obtained the coupons from Buttita. *Id.* at 593. The Court said an inference of participation by Di Re was not warranted, noting the meeting was on a city street in broad daylight and involved the mere passing of papers whose counterfeit nature could not be easily determined (it required an expert at trial to establish that they were counterfeit). Moreover, the argument that "one who accompanies a criminal to a crime rendezvous cannot be assumed to be a bystander" – although "forceful enough in some circumstances" – was "farfetched" under these facts, and whatever suspicion arose "seems diminished, if not destroyed" by the fact that the informant was present and "pointed out Buttita, and Buttita only, as a guilty

party." *Id.* at 593-94. "Any inference that everyone on the scene of a crime is a party to it must disappear if the Government informer singles out the guilty person." *Id.* at 594.

In the instant case, the police knew prior to arresting Defendant that Perry had a large quantity of methamphetamine – clearly meant for distribution – and that he had arranged a meeting for the purpose of delivering the methamphetamine to Smith. Perry informed officers that the plan called for the drugs to be delivered to Smith. Insofar as the evidence at the hearing is concerned, however, Smith made no mention of Defendant, and certainly did not implicate Defendant in the planned delivery. In response to a text message setting up the meeting, Smith arrived at the appointed time and place and driving the vehicle described by Perry, thereby corroborating Perry's assertions about the delivery plan. Smith's behavior objectively indicated he was a willing participant in the plan, as confirmed by the fact that he parked near Perry, talked to him briefly, and then took the box containing the methamphetamine and placed it in the back of the Hummer. Although officers thus clearly had reason to believe Smith committed the offense of possession of methamphetamine with intent to distribute, the circumstances did not give officers reasonable grounds to believe, at that point, that Defendant was a knowing participant with Smith in a plan to possess the methamphetamine. Viewed objectively, all they knew was Defendant was a female passenger riding with Smith who sat in the Hummer while Smith retrieved the box from Perry. *Cf. United States v. Najera*, 165 F. App'x 700, 704 (10th Cir. 2006) ("Unlike a passenger who might just have been 'along for the ride,' Najera was driving in a separate vehicle. It is highly unlikely that Garcia would have invited an innocent companion to follow him in a separate car while he checked on a drug delivery in process.")

Under the evidence presented, the officers knew nothing about the reason for Defendant's presence in the Hummer. It was of course *possible* that Defendant was there because she was a

willing participant in Smith's plan. But the government cites no facts known to the officers tending to show that Defendant knew about the methamphetamine and was there to aid Smith in his possession of it. Perry's statement to officers before the delivery would tend to suggest exactly the opposite – that Defendant was not involved in the plan. The circumstances here are thus closer to *Di Re* than to *Pringle*. Like the informant in *Di Re*, Perry's statement to police identified only one guilty party – Smith – and by implication suggested Defendant was not involved. As far as the officers at QuikTrip knew, Defendant could have been a spouse, girlfriend, or other acquaintance who simply accompanied Smith to the QuikTrip without knowledge of his plan. "In order to find probable cause based on association with persons engaging in criminal activity, some additional circumstances from which it is reasonable to infer participation in [the] criminal enterprise must be shown." *Najera*, 165 F. App'x at 704 (quoting *United States v. Hillison*, 733 F.2d 692, 697 (9th Cir. 1984)). And unlike the circumstances of *Pringle*, no inference of knowledge and a joint operation arises from the fact that Defendant was riding in the car with Smith and sat in the Hummer while he picked up the box. The delivery itself consisted of little more than a momentary stop at a convenience store near a major thoroughfare. In *Pringle*, the presence of three men in a small vehicle at 3 a.m. was enough to infer that they all had knowledge of drugs in clear plastic baggies located in an accessible area of the back seat. Here, the drugs known to the officers were contained within an enclosed cardboard box and were placed in the back of the vehicle by Smith alone. It is not clear whether Defendant was aware of or ever saw the box, but the evidence was clear that Defendant had no opportunity to see what was inside the box before she was arrested, and the government cites no evidence that officers had reason to believe – again, prior to Defendant's arrest – that she knew the box contained methamphetamine. For these reasons, the inference of joint knowledge that was present in *Pringle* is at least diluted,

if not absent, under the facts of this case. In *Pringle*, the drugs and cash in the car indicated one or more of the men had been engaging in drug dealing, "an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." *Pringle*, 540 U.S. at 373. Here, the objective facts indicate Defendant could not have seen anything more than Smith placing a cardboard box in the vehicle. And as outlined previously, the statement of Perry describing the plan indicated that only Smith was involved. *Cf. Najera*, 165 F. App'x at 704 (officers had probable cause to arrest defendant who showed up at site of drug delivery in part because they knew that someone else was involved in the transaction, and the meeting took place at remote farm where defendant could have had no legitimate business).

Defendant's presence at the scene of a drug delivery might have been an objectively reasonable basis for suspecting her of involvement and thereby justifying a detention to investigate whether she was involved in the plan to possess methamphetamine. But the facts presented by the government at the hearing fell short of the probable cause required to arrest her for an offense. *Cf. Wong Sun v. United States*, 371 U.S. 471, 479 (1963) ("It is basic that an arrest … must stand upon firmer ground than mere suspicion….") The court accordingly finds that Defendant's arrest was an unreasonable seizure under the Fourth Amendment.

### B. Search of the Vehicle and Containers

The Supreme Court has recognized an "automobile exception" to the general Fourth Amendment requirement that police must obtain a warrant before searching a person's "houses, papers, [or] effects." The exception was premised on the inherent mobility of automobiles (which can make it impractical to preserve evidence until a warrant is obtained) and the reduced expectation of privacy people have in their vehicles, as compared to houses or other places. *See United States v. Medina-Gonzalez*, 437 F. App'x 714, 717-18 (10th Cir. 2011). Under this

exception, "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained [therein]." *United States v. Stewart*, 473 F.3d 1265, 1270 (10th Cir. 2007) (quoting *California v. Acevedo*, 500 U.S. 565, 580 (1991)). "Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." *United States v. Bradford*, 423 F.3d 1149, 1159 (10th Cir. 2005). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 824 (1982). This includes the search of any containers found inside the car, without qualification as to ownership, that may contain the object of the search. *See Wyoming v. Houghton*, 526 U.S. 295, 301 (1999).

The automobile exception does not require a showing that it was impracticable for the police to obtain a warrant. Under established Supreme Court precedent, "the 'automobile exception' has no separate exigency requirement." *Maryland v. Dyson*, 527 U.S. 465, 466 (1999). The Supreme Court "made this clear in *United States v. Ross* [456 U.S. 798 (1982)], when we said that in cases where there was probable cause to search a vehicle[,] 'a search is not unreasonable if [it is] based on facts that would justify the issuance of a warrant, *even though a warrant has not been actually obtained*.'" *Id.* at 467 (citing *Ross*, 456 U.S. at 809) (emphasis in *Dyson*.) Thus, "[if] a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment … permits police to search the vehicle without more." *Id.* (citation omitted.) Moreover, the exception authorizes a search whether it occurs immediately or after the automobile has been moved to a secure location. When "police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody."

11

*Michigan v. Thomas*, 458 U.S. 259, 261 (1982). *See also United States v. Tapia*, No. 09-3060, 2010 WL 299245, at *5 (10th Cir. Jan. 27, 2010) ("The Supreme Court has repeatedly held that 'police officers with probable cause to search an automobile at the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant.'") (quoting *Texas v. White*, 423 U.S. 67, 68 (1975) (per curiam).

Under these standards, the officers' search of the Hummer and the containers within it was reasonable. The officers had probable cause to believe Smith knowingly possessed methamphetamine with intent to distribute, and obviously knew he had placed the box containing methamphetamine in the vehicle. But they were also aware of facts giving rise to a fair probability that other evidence relating to the unlawful possession of controlled substances could be found in the vehicle. Smith was found to be in possession of a syringe near his ankle just after he got out of the vehicle. The hidden syringe on Smith's person would indicate a reasonable probability that the vehicle contained other controlled substances in addition to the box with methamphetamine. *Cf. United States v. Rowland*, 341 F.3d 774, 785 (8th Cir. 2003) ("The discovery of razor blades, rolling papers, and a syringe during the Terry search was sufficient to create probable cause to search the entire vehicle."); *United States v. Flatden*, 230 F.3d 1083, 1086 (8th Cir. 2000) (observation of "an item commonly used in the manufacture of methamphetamine ... in plain view in the back seat" gave probable cause to search other parts of the automobile for further contraband or evidence); *United States v. Wooliver*, No. 11-3027-01-CR-S-RED, 2012 WL 398666, at *1 (W.D. Mo. Feb. 7, 2012) ("It is clear from the evidence that the officers had probable cause to search the vehicle, particularly due to Officer Sokolik's prior encounters with Defendant and the fact that a syringe was found on Defendant's person.")

Additionally, the officers knew that Perry had texted Smith earlier to arrange the meeting and that Smith had driven to the meeting. There would have been a fair probability that the vehicle would also contain other evidence tending to show Smith's involvement in the planned delivery, including the likelihood of cell phones (with possible messages from Perry or others), travel or gas receipts indicating Smith's whereabouts, documents relating to ownership of the vehicle, and other items commonly associated with large drug trafficking operations, including firearms, large amounts of cash, or contact information of other individuals involved in the enterprise.

Because the court finds the officers had probable cause for the search of the vehicle and its containers, the court need not address the government's alternative arguments pertaining to the search, including that it was reasonable under the inventory search exception. The court further finds that because the officers' authority to search the car was unconnected to and not a product of Defendant's unlawful arrest, that arrest provides no basis for suppression of the items of evidence found in the car and its containers. *See e.g., United States v. Howard*, 621 F.3d 433, 455 (6th Cir. 2010) ("Because the search of the Suburban was supported by probable cause, independent of Howard's unlawful arrest, the cash contained inside of the vehicle was properly seized.") Additionally, the court rejects Defendant's argument that probable cause to search did not extend to containers in the vehicle that may have belonged to Defendant. The Supreme Court rejected a "passenger's packages" argument in *Wyoming v. Houghton*, 526 U.S. 295 (1999), finding that probable cause extended to all packages and containers in a car that could contain the object of the search, without regard to ownership of the packages. *Id.* at 302 (nothing in Supreme Court precedents "admits of a distinction among packages or containers based on ownership;" "[a] passenger's personal belongings, just like the driver's belongings …, are 'in' the car, and the officer has probable cause to search for contraband *in* the car.")

13

### C. Statements after Miranda Waiver

Unlike the search of the vehicle, the statements Defendant gave to officers after being arrested are related to the arrest, as the fact of her custody permitted the interrogation to take place. In *Brown v. Illinois*, 422 U.S. 590 (1975), the Supreme Court addressed whether such statements must be excluded as the fruit of an illegal arrest, or whether they are admissible "because the giving of the *Miranda* warnings sufficiently attenuated the taint of the arrest." *Id.* at 592 (citing *Wong Sun*, 371 U.S. 471.) The Court determined that "[i]n order for the causal chain between the illegal arrest and the statements subsequent thereto to be broken, *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness, but that it be 'sufficiently an act of free will to purge the primary taint.'" *Brown*, 422 U.S. at 602 (citation omitted) (punctuation altered). The Court rejected the premise that the giving of *Miranda* warnings, in and of itself, was sufficient to "attenuate the taint" of an unconstitutional arrest, noting that such a finding could substantially dilute the exclusionary rule. *Miranda* warnings "are an important factor" in determining whether a confession is obtained by exploitation of an unlawful arrest, but other factors must be considered as well, including "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, … and, particularly, the purpose and flagrancy of the official misconduct…." *Id.* at 603-04. Attenuation occurs "when the connection between the unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *United States v. Shrum*, 908 F.3d 1219, 1235 (10th Cir. 2018) (quoting *Utah v. Strieff*, 579 U.S. 232, 238 (2016)).

Under these standards, the court finds Defendant's statements to officers during her custodial interrogation must be suppressed. Defendant's interrogation took place within a couple of hours of her arrest. *See Strieff*, 579 U.S. at 239 ("Our precedents have declined to find that this factor favors attenuation unless 'substantial time' elapses between an unlawful act and when the evidence is obtained.") Defendant was in custody the entire time and there were no intervening circumstances between her arrest and the interrogation.[2] In *Brown*, the Supreme Court found similar circumstances weighed in favor suppression. *Id.* at 604 ("Brown's first statement was separated from his illegal arrest by less than two hours, and there was no intervening event of significance whatsoever.") As for the "purpose and flagrancy" of the violation, flagrancy is not an applicable term here – where the officers only made an unwarranted assumption about the existence of probable cause arising from Defendant's presence at the scene. *Cf. Strieff*, 579 U.S. at 243 ("For the violation to be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure.") But there clearly was an investigatory purpose to the unlawful arrest, and a direct connection between the unlawful arrest and the obtaining of inculpatory statements from Defendant. In that sense the evidence shows the exploitation of an unlawful seizure to obtain evidence, such that the admission of the statements into evidence would be contrary to the rationale underlying the exclusionary rule. When all of the factors are considered, and even though the government has made a substantial showing that Defendant's waiver of *Miranda* rights and the giving of a statement were voluntary, the court concludes that

---

[2] As previously indicated, officers found evidence during a search of the Hummer that implicated Defendant in controlled substance offenses. That evidence included controlled substances located in a suitcase containing Defendant's clothing and a significant amount of cash in a purse containing Defendant's identification. The court cannot find that this amounted to an intervening circumstance that purged the taint of the unlawful arrest. Even if that sort of evidence could amount to an intervening circumstance (a point on which the court declines to opine), the evidence did not show that the search occurred before Defendant's interrogation, and the government has not otherwise met its burden under *Brown*.

the motion to suppress should be granted as to statements made by Defendant during her custodial interrogation.

### III. Conclusion

Defendant's motion to suppress evidence (Doc. 75) is GRANTED IN PART and DENIED IN PART as stated above. IT IS SO ORDERED this 1st day of September, 2022.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE
